## F. M. HANKS v. THE STATE.

### COURT OF APPEALS, TYLER TERM, 1882.

*Forgery—Jurisdiction—Legislative Authority.*—Under Art. 454, P. C., the courts of this State have jurisdiction of the offense of forgery committed in another State, and affecting an interest in land in this State.

Appeal from Travis county.

Opinion by White, P. J.—There is but a single question which we think is involved in, and requires discussion, on this appeal.

Appellant and one P. F. Willman were jointly indicted in the District Court of Travis county, for the forgery of a transfer of a land certificate for a league and labor of land, in the State of Texas. It is alleged in the indictment, that the acts constituting the forgery, were all committed in Caddo Parish, in the State of Louisiana. No act, or thing connected with the execution of the forgery, is charged to have been done in Texas, but the crime and injury, so far as this State is concerned, are averred to consist in the fact that the said forgery in Louisiana "did, and there relate to, and affect, an interest in land, in the State of Texas, * * * and would, if the same were true and genuine, have transferred and affected certain property, to-wit: a certain land certificate,

No. 222, for one league and labor of land in the Sta;e of Texas, etc. ".

This indictment was brought under Art. 451, of the Penal Code.

By Art. 454, of the Code, it is declared that " persons out of the State may commit and be liable to indictment and conviction, for committing any of the offenses enumerated in this chapter which do not, in their commission, necessarily require a personal presence in this State, the object of this chapter being to reach and punish all persons offending against its provisions, whether within or without this State, etc. "

It was made a ground, both in the motion to quash the indictment, and in arrest of judgment, and is again urgently insisted upon in the able brief of counsel for appellant, that the facts alleged, if true, would constitute an offense against the sovereign State of Louisiana alone, and one of which the courts of this State would have no jurisdiction.

If the position thus assumed in behalf of appellant be correct, then the legislature had no authority to pass the act quoted, and the same is an absolute nullity. Can this proposition be maintained? It certainly cannot be found in any constitutional inhibition, State or federal, depriving the legislature of the authority, and unless there is some authority of law superior to the right of a State legislature, which could, and should, control the action of the latter within thn scope of its constitutional powers, we cannot well perceive how its enactment, if reasonable and consistent with that power, could be held inoperative and nugatory.

Two authorities, which are to the effect that " the legislature of one State cannot define and punish crimes committed in another State, " are mainly relied on. The leading one is the case of The State v. Knight, taken from 2 Haywood and reported in Taylor's North Carolina Reports, p. 44. The other is People v. Merrill, 2 Park Cr. Rep., 590. Defendant in the first case was indicted under a statute, the words of which were : " And, whereas, there is reason to apprehend that wicked and ill disposed persons, resident in the neighboring States, make a practice of counterfeiting the current bills of ·

o

credit of this State, and by themselves or emissaries utter or vend the same with an intention to defraud the citizens of this State, Be it enacted, etc., that all such persons shall be sub-ject to the same mode of trial, and, on conviction, liable to the same pains and penalties as if the offense had been committed within the limits of this State; and prosecuted in the Superior Court of any district in the State." It was held that the juris-diction to try in North Carolina was doubtful, and the pris-oner was discharged. Mr. Wharton, in his work on the Con-flict of Laws, says: " The sturdiest advocates of the hypoth-esis that the *locus delicti* alone confers jurisdiction, have ad-mitted that there are cases in which a person whose residence is outside the territory may make himself, by conspiring extra-territorially to defeat its laws, infra-territorially responsible. If, for instance, a forger should establish on the Mexican side of the boundary between the United States and Mexico a man-ufactory for the forgery of United States securities, for us to hold that when the mischief is done he can take up his resi-dence in the United States without even liability to arrest, would not only expose our government to spoilation, but bring its authority into contempt. To say that in such a case the Mexican government can be relied upon to punish is no answer; because, first, in countries of such imperfect civili-zation, penal justice is uncertain; secondly, in case where in such country the local community gains greatly by the fraud and suffers by it no loss, the chances of conviction and punish-ment would be peculiarly slight; and thirdly, because all that the offender would have to do to escape justice in such a case would be to walk over the boundary line into the United States, where, on this hypothesis, he would go free." (Whar-ton's Conflict of Laws, Sec. 876. Again he says: "Thus it has been held that the originator of a nuisance to a stream in one county which affects such stream in another county is liable to prosecution in the latter county; that the author of a libel uttered by him in one county and published by others in an-other county, from which he is absent at the time, is triable in the latter county; that he who on one side of a boundary shoots a person on the other side is amenable in the county where the blow is received; that he who in one State employs

an innocent agent to obtain goods by false pretences in another State is amenable in the latter State; and that he who sells through agents, guilty or innocent, lottery tickets in another State is amenable in the State of the sale, though he was absent from such State personally. In England we have the same principle affirmed by the highest judicial authority," and he quotes Lord Campbell as saying that "a person may by the employment, as well of a conscious as an unconscious agent, render himself amenable to the laws of England when he comes within the jurisdiction of our courts," and Sir Philimone as saying, " it is a monstrous theory that any technical rule of venue should prevent justice from being done in this country on a criminal for an offense which was perpetrated here but the execution of which was concocted in another country." (Whart. Confl. Laws, Sec. 877. See also Adams v. People, 1 Comstock N. Y., 173 ; Comm. v. McLoon, 101 Mass., 1 ; Ham v. State, 4 Tex. Ct. App., 645; Rogers v. State, 10 Tex. Ct. App., 655.)

Mr. Cooley in his great work on Constitutional Limitations, treating of territorial limitation to legislative authority, says : "The legislative authority of every State, must spend its force within the territorial limits of the State. * * * It cannot provide for the punishment as crimes of acts committed beyond the State boundary, because such acts, if offenses at all, must be offenses against the sovereignty within whose limits they have been done." But after laying down this doctrine, in the very next sentence, he says: "But if the consequences of an unlawful act, committed outside the State, have reached their ultimate and injurious result within it, it seems that the perpetrator may be punished as an offender against such State." (Cooley's Con. Lim. (4 ed.) pp. 134–135.) If this latter rule be the law, then it is a solecism to say that the legislature cannot so declare it by express enactment.

Story in his Conflict of Laws, says: "Although the penal laws of every country are in their nature local, yet an offense may be committed in one sovereignty in violation of the laws of another, and if the offender be afterward found in the latter State, he may be punished according to the laws thereof, and the fact that he owes allegiance to another sovereignty is

no bar to the indictment." (Story's Con. Laws, (4 ed.) Section 625 b.)

The offense charged in the indictment against appellant comes clearly within the terms of Art. 451, P. C. Had it been committed by one of our citizens within this State, tr3 could then be no question as to his liability. Here, the defendant, in effect, says: "You may try and convict your own citizens for the same act I have committed, but you cannot try and punish me, because what I have done, though equally as violative of the spirit and letter of the law, is still not triable in your court, because it was committed in another State, and your legislature could not pass a law, which could embrace me within its pains and penalties."

We can see no valid reason why the legislature of the State of Texas, could not assert, as it has done in Art. 454, *supra*, her jurisdiction over wrongs and crimes with regard to the land titles of the State, no matter whether the perpetrator of the crime was at the time of its consummation within or without her territorial limits. Such acts are offenses against the State of Texas and her citizens only, and can properly be tried only in her courts. It may in fact be no crime against the State in which it is perpetrated, and if it is, under such circumstances as we are considering, that other State would have no interest in punishing it, and would rarely, if ever, do so. When this forgery was committed in Louisiana, *eo instanter* a crime was committed against, and an injury done the State of Texas, because it affected title to lands within her sovereignty. Our conclusion is that the legislature had authority to adopt the act in question; that the same is in violation of no law superior thereto, and that the jurisdiction thereby conferred, can be rightly exercised by the courts of this State. Defendant appears to us to come clearly within the scope of that jurisdiction; he has been, as far as we can see, fairly and impartially tried under the law and legally convicted, according to the evidence in the record. We have found no error for which a reversal of the judgment should be had, and it is therefore affirmed.